## POWERS and another vs. BEARS and another.

Before the public can acquire the right to enter upon, and permanently occupy
land which may be needed for its use, against the will of the owner, the
value of the property to be taken must be ascertained by some legal and proper
proceeding, and be paid to the owner; or if not paid to, or received by him,
an adequate and safe fund must be provided, from which he may, at some fu-
ture time, be compensated.

In the case of a private corporation, like a railroad company, this principle would
require it to tender in money the ascertained damages or compensation, with
expenses, if any, to the owner or person interested, and if he should refuse
to receive it, to deposit the same with some proper person, to be kept for
the owner until he shall apply for it.

*Norton vs. Peck*, 3 Wis., 714; *Shepardson vs. M. & B. R. R. Co.*, 6 Wis., 605; and
*Robbins vs. M. & H. R. R. Co.*, id., 636, cited and approved.

A statute provided that a railroad company, before seizing and appropriating the
land of others to its own use, should, by its agent, first offer to pay to the
owner or owners, the sum which such *agent* and two disinterested freehold-
ers of the county where the lands are situate, should, on oath and in writ-
ing, swear to be a just compensation for such land and damages: *Held*, that
such a proceeding to ascertain the value of land so to be appropriated, is
not a compliance with the requirements of the constitution.

A tender to the owner of land, of a compensation assessed in the mode prescribed by that statute, which he refused to accept, did not give the railroad company the right to appropriate the land to its own use, and an injunction was properly granted, to restrain such company from the further occupancy or appropriation of said land.

The commissioners to value the land in such case, and ascertain the damages sustained by the owner, should be impartial men, indifferently chosen or appointed between the parties, and their investigation open and known to both parties, giving to each an opportunity to be heard, and to offer such evidence as may be proper.

APPEAL from the Circuit Court for *Winnebago* County.

Complaint to restrain the defendants from digging up the soil, and making excavations and embankments across a tract of land belonging to the plaintiffs, which, it is alleged, the defendants, who are insolvent, have without color of right, commenced doing, and are threatening to proceed with, so as to hinder the free passage of the plaintiffs from one part of their said land to the other, rendering the part so appropriated to such excavations and embankments entirely worthless to the plaintiffs for agricultural purposes, for which it was used by them, greatly deteriorating the value of the remainder of said land, and doing them an irreparable injury. Prayer, for a perpetual injunction on the final hearing, and, in the meantime, for a temporary injunctional order, restraining the defendants from the further commission of such wrongs.

Upon the filing of this complaint, which was duly verified, the county judge of Winnebago county granted a temporary injunctional order, in accordance with the prayer of the complaint.

The defendants answered, that they lawfully entered upon the plaintiffs' land, as the employees of the Sheboygan and Appleton Railroad Company, a corporation duly organized under the law of the state of Wisconsin, entitled "An act to incorporate the Sheboygan and Appleton Railroad Company," approved March 29th, 1855; that before they entered upon any part of said land, the said company caused the portion so entered upon (being four rods wide, and sixty rods more or less in length), and the damages to be sustained by the plaintiffs from its appropriation, to be duly appraised

according to law, by an agent of said company and two disinterested freeholders of the county in which the land is situate, who did, on their oaths, declare in writing, that they had examined said piece of land so appropriated by said company, and that the just compensation to the owners of said land, for the same and for the damages sustained by them, amounted to the sum of $100; that after the making of said appraisal, and before the entry upon said parcel of land by the defendants, the said railroad company duly tendered to the plaintiffs the sum of $100, the amount so awarded them by said appraisers for said parcel of land, and the damages aforesaid; that the defendants did not enter upon any portion of the plaintiffs' land, except the strip so appropriated and appraised, and were lawfully at work thereon, preparing the ground for the track of said road, doing the plaintiffs no unnecessary damage. They also denied that they were insolvent, and insisted, as a defense to the action, that the plaintiffs had a full and adequate remedy at law for their supposed grievances. The answer was also verified.

The appraisement referred to in the answer is as follows:

STATE OF WISCONSIN, }
   County of Winnebago. } ss.

       We, James V. Palmer, agent of the Sheboygan and Appleton Railroad Company, and G. P. Vining and A. M. Thoms, disinterested freeholders of the county aforesaid, being duly sworn do depose and say, that we have examined a certain piece of land in the town of Oshkosh, in said county, situate in the s. e. qr. of sec. 13, owned, or claimed to be owned, by Franklin M. Powers and Herman G. Powers, which has been appropriated by said railroad company, under and by virtue of its charter; said piece being four rods in width, and forty rods more or less in length, and containing one and a half acres, more or less; and that the just compensation to the owner of said land for the same, and for the damages sustained by him, amounts to the sum of one hundred dollars. For a more particular description of said land,

reference is hereby made to the maps and other documents of said railroad company.

JAMES V. PALMER.
GORHAM P. VINING.
A. M. THOMS.

Subscribed and sworn to before me, this 16th day of November, A. D. 1859.

C. COOLBAUGH, Notary Public, Wis.

A motion was made before the judge of the Winnebago circuit court, to vacate the injunctional order which had been granted by the county judge, upon the following grounds: 1st. Said injunction suspends the ordinary and general business of a corporation, and therefore the county judge was not authorized to grant the same. 2d. The complaint shows upon its face that the plaintiffs had a full and adequate remedy at law, and therefore the action is improperly brought. 3d. The answer shows that no rights of the plaintiff have been invaded or disturbed illegally. 4th. The answer denies all the equities of the complaint, and all the allegations therein upon which an injunction could have been granted. 5th. Said proceedings are in other respects irregular, &c.

Upon the hearing of this motion, several affidavits were read. The affidavit of *Franklin M. Powers*, one of the plaintiffs, stated that he had never received any information or notice of the location of the Sheboygan and Appleton Railroad across the land of the plaintiffs until one Dwight showed him the affidavit of the appraisers, and that when said Dwight offered him the amount of said appraisement, he did not know what land the company desired to take, nor was he informed for what land the money was offered; that he was not present at the time of said appraisal, nor did he select or agree upon, nor was he requested to select or agree upon any appraiser of said land; that he believes the damage to the plaintiffs resulting from the location of said railroad across said land, amounts to at least $1,500; that the defendants are strangers and have no visible means or property known to him.

Several other affidavits, by disinterested persons, were read, in which the value of the strip sought to be appropriated for the railroad track through the plaintiff's land, was variously estimated at from $375 to $450, and the damage resulting to the plaintiff from the location of said railroad across their land, at from $1,000 to $1,650.

The affidavit of one Doe was also read on the part of the plaintiffs, stating that the defendants were reputed to be partners in the building of said railroad, and that the defendant *Bears* had told the affiant, since the commencement of their work on said road, that Wm. B. Ogden and Perry H. Smith were the paymasters of said defendants for said work.

The affidavit of Timothy Dwight was read on the part of the defendants, showing that, on the 16th day of November, 1859, he tendered to *Franklin M. Powers*, in payment for the strip of land described in the appraisement hereinbefore mentioned, the sum of $100, and that *Powers* refused to receive the same and execute a deed of the land to the Sheboygan and Appleton Railroad Company.

The circuit court made an order vacating the injunction, from which the plaintiffs appealed.

*Bouck & Edmonds*, for appellants:

1. The complaint shows a proper case for a temporary injunction. *Kerlin vs. West*, 3 Green's Ch. Rep., 449; *Hart vs. The Mayor, &c.*, 3 Paige, 213; *Spear vs. Cutter*, 5 Barb., 486; *Johnson vs. White*, 11 id., 194; *Coulson vs. White*, 3 Atk., 21; Story's Eq. Jur., §§ 926-7; *Attorney General vs. Hunter*, 1 Dev. Eq., 12; Jeremy's Eq. Jur., 312; *Ingraham vs. Dunnell*, 5 Met., 118; Mitf. Pl., 3 ed., 111.

The Appleton and Sheboygan Railroad Company had no right to enter upon the lands along their route and construct their road, without the consent of the owners, or without first paying, or securing the payment of a just compensation. *Robbins vs. M. and H. R. R. Co.*, 6 Wis., 636; *Shepardson vs. M. and Bel. R. R. Co.*, id.. 605; *Norton vs. Peck*, 3 id., 714; *Weeks vs. The City of Mil.*, 10 id., 242. See also *Doty vs. S. and E. R. R. Co.*, 3 Halsted Ch. R., 61; *Bloodgood vs. The M. and H. R. R. Co.*, 18 Wend., 9; *Keene vs. The*

*Borough of Bristol*, 26 Penn. St., 46; *Gardner vs. The Village of Newburgh*, 2 John. Ch. Rep., 162.

2. The answer of the defendants is not evidence at all, as such, and is used on a motion to dissolve an injunction only by reason of its being verified so as to make it an affidavit, and as such it has the same force as the verified complaint. *Hascall vs. Madison University*, 8 Barb., 174–176; *Malcolm vs. Miller*, 6 How. Pr. R., 456; *Schoonmaker vs. The Reformed Dutch Church*, 5 id., 265.

3. The county judge had a right to grant the injunction. The acts complained of and those set up in the answer, are not the general and ordinary business of the corporation. To be such they must be authorized by law. Moreover the corporation is not enjoined, and the fact claimed by the defendants, that they are employees of the corporation, is disputed. The defendants cannot avail themselves of the right of a third party to defeat the injunction. Besides, in *Shepardson vs. The M. and Bel. R. R. Co.*, *supra*, an injunction restraining the corporation from building their road, was granted by a court commissioner, and his action was sustained by this court.

*Wheeler & Coolbaugh*, for respondents:

1. The mode of ascertaining the damage to the owners of the land, by commissioners appointed by courts, is not repugnant to the constitution. 3 Paige Ch. R., 45. Such condemnation is not unconstitutional, provided the charter of the corporation requires compensation to be made to the owner of the land taken by it. *Bloodgood vs. M. and H. R. R. Co.*, 14 Wend., 52; 18 id., 9; *Smith vs. Helmer*, 7 Barb., 416; *Pierce on Am. R. R. Law*, 152. The payment of such compensation need not precede the entry upon the land by the company. It is enough that provision is made for its payment. 18 Wend., 9.

Section 2 of chapter 168 of the General laws of 1859, directs the manner in which railroad companies may proceed to determine the value of land and the damages sustained by its appropriation, and authorizes a tender of the amount of the appraisement. If such offer be refused, then either party may apply to any justice of the supreme court or circuit

judge, in term time or vacation, for the appointment of com- <span>June Term, 1860.</span>
missioners, &c.   In *Shepardson vs. M. and Bel. R. R. Co.*, 6
Wis., 605, the law under which the railroad company pro- <span>Powers et al.</span>
ceeded, was held unconstitutional because it provided that <span>Bears et al.</span>
only the company could make the application.   The act of
1859 above refered to, is not liable to that objection.   Sec. 3
of the same chapter provides, that the tender contemplated
in the 2d section, shall be the commencement of the proceed-
ings in all cases, (where the parties shall not otherwise agree,)
and that all subsequent proceedings shall be conducted as
above provided.   Sec. 12 of the charter of the S. & A. Railroad
Company provides, that said company shall have full power
and authority, pending all proceedings to condemn land for
their use, and until they shall refuse to pay, &c., "to use, oc-
cupy and enjoy the peaceable and uninterrupted possession
of such lands, for all the lawful purposes of such corporation,
and they shall not, while such proceedings are pending, nor
until such refusal, be disturbed in such possession, use, occu-
pation or enjoyment, *by any proceeding, either in law or in
equity.*"

2. Equity will not interfere by injunction in case of a
naked trespass where there was a full remedy at law.   3
Green Ch. Rep., 449 ; 6 Ohio, 166 ; 7 John. Ch. Rep., 315.
The act complained of, as set forth in the complaint, is
only a naked trespass.   It is only when the wrong is irrepa-
rable, that courts will interfere by injunction.   1 A. K.
Marsh., 554 ; 9 Wend., 570 ; 2 id., 162 and 463 ; 6 id., 500 ;
2 Waterman's Eden, 226, note 1, 3d ed.   Where the answer,
as in this case, fully denies the equity of the bill, the prac-
tice is to dissolve the injunction.   4 Paige, 111 ; 5 id., 112.

3. Courts will not, on a preliminary motion, restrain the
acts of a corporation which are within the scope of its charter.

4. This injunction suspends the general and ordinary
business of a corporation, and therefore, the court commis-
sioner had no power to grant the same.

*By the Court*, DIXON, C. J.   We do not feel called upon in   <span>July 10</span>
this case to enter into a discussion of the question, as to the
time when the owner of private property taken for public

use shall be compensated therefor, to which counsel devoted much attention, and the repeated and thorough examinations of which by the courts of our sister states, have produced a variety of conflicting and irreconcilable opinions and decisions, for the reason that we regard it as substantially settled, in a manner entirely in harmony with our own views, by the former adjudications of this court. In the case of *Norton vs. Peck*, 3 Wis., 714, it was held that the officers of a town could not enter upon and appropriate to public use the land of an individual, required for a highway, unless compensation therefor was first made, or unless proper proceedings were first taken by the authorities of the town to ascertain its value, so that he could receive it when called for. In that opinion the court say, that in the case of land taken by the authorities of a town, they do not decide that actual prepayment of the damages in money is necessary, for the reason that the entire taxable property of the town constitutes an adequate fund to which the owner may without risk of loss resort to compel payment. In the subsequent case of *Shepardson vs. R. R. Co.*, 6 Wis., 605, the distinction between public or municipal corporations, and corporations merely private, as instruments in the hands of the legislature by which it may exercise the right of eminent domain, in respect to the fund to which the owner may resort, is particularly noted, and it is observed that although in theory the property in both cases is taken by the public, yet in the former case all the taxable property in the town *is* pledged for the payment of the value, while in the latter, the uncertain and oftentimes worthless responsibility of the corporations can only be looked to. In speaking of the case of *Norton vs. Peck*, the late chief justice says: "As in that case we held it indispensable that the compensation should be made for the property taken, without driving the owner to a suit at law to ascertain its value, or at least that the town authorities should proceed to ascertain the value of the land taken, before appropriating it to the use of the public, so that the owners should be able to recover its value from the property of the town, we must in this case hold that the railroad company cannot enter upon the plaintiff's land and apply it to

the use of the road, without making compensation and without taking any measures to ascertain the damages which the plaintiff has sustained by their acts." In the still later case of *Robbins vs. R. R. Co.*, 6 Wis., 636, much stronger language was used by the court. It was said that when the government "takes land, by virtue of its sovereign right and power, it is bound by the constitution to pay the value thereof, at the time it is taken." Setting to the one side the adjudications of this court upon the mill dam law, so called, which was sustained contrary to the individual convictions of all its present members, on the ground that the earlier decisions upon it had made it a rule of property which could not, with a due regard to individual interests, be departed from, we are of opinion that the cases above referred to conclusively establish that one of two things must invariably be done before the public can, against the will of the owner, acquire the right to enter upon and permanently occupy his land, which may be needed for public uses.

1. The value of the property to be taken must be ascertained by some legal and proper proceeding, and be paid; or,

2. If the value thus ascertained be not paid to, or received by the owner, an adequate and safe fund must be provided, from which he may at some future time be compensated.

These, it seems to us, are the results of those cases and they are such as we should be unwilling to depart from. The latter proposition, in the case of a private corporation, like a rail road company, would undoubtedly require it to tender or offer in money the amount of the ascertained damages, or compensation with expenses, if any, to the owner or person interested, and if, on the ground of an intended appeal or otherwise, he should refuse to receive it, the company would be required to deposit the same with some proper officer or person, to be kept good for the owner until the end of the litigation, or until such time as he should apply for and signify his readiness to accept it.

With these rules, as to the requirements of the constitution, already fixed, it remains only to be determined whether the statute under which the railroad company proceeded in

this case, and the steps taken by it to acquire the right to the permanent use and occupation of the plaintiffs' land, are in compliance with them. The statute, section 2, chapter 168, laws of 1859, provides: "The company, by its agent, shall first offer to pay to the owner or owners, guardian of the owner or agent of the owner or owners, or of any other person having any interest in such lands (as the case may be) if resident of this state, such sum as such agent and two disinterested freeholders of the county where the lands are situated, shall, on oath, and in writing, swear is just compensation for such lands and damages, before seizing and appropriating any such lands, in all cases where lands have not already been appropriated.' Having complied with this provision, the company attempted to take permanent possession of, and to build and construct its road through the land in question. To prevent its so doing, the plaintiffs, who refused to receive the money offered, commenced this action against the defendants, who were the agents or contractors having charge of the work, and procured therein a preliminary injunction, which, on motion of the defendants before the court at term, was dissolved. From the order dissolving the injunction this appeal is taken. It must be very evident to every impartial mind, that such a proceeding to ascertain the value of the land to be taken, and to determine the damages which the owner shall be entitled to receive, if sustained, would be a mere evasion of the provisions of the constitution, as heretofore expounded by this court. It is open to the grossest partiality and abuse. It is *ex parte* and secret. The board of appraisers who are to sit in judgment on the rights of the parties, are chosen by one of them, in the absence and without the knowledge or consent of the other. One of its members is the agent and employee of the company, through whom it exercises its power of choosing the other two. They act without evidence, and their sessions are not public. As a proceeding to ascertain and determine the rights of the land owner, it is a mere mockery, equivalent to making one of the parties to a controversy a judge or trier between himself and his adversary, and ordaining that the trial shall take place in the ab-

sence and without the knowledge of the latter, or equivalent to saying that the railroad company may enter into the permanent and peaceful enjoyment of the land without any compensation whatever. No one will say that such a proceeding is a compliance with the constitution, or that it can be tolerated. The commissioners to value the land and ascertain and determine the damages, as contemplated by that instrument, are to be fair and impartial men, indifferently chosen or appointed between the parties, and their investigation is to be open and known to both, giving to each an opportunity to appear before them and make such statements and offer such proofs as may be necessary and proper. Until such a proceeding has been had and the corporation have complied with their award or decision in the manner above indicated, it has no right to the permanent occupancy of the land, for the purpose of constructing its road. It may also be observed that no provision is made for depositing or keeping good the money offered to the owner pursuant to such unjust and anomalous assessment. To the question as to whether a writ of injunction is a proper remedy in a case like the present, in addition to the authorities cited by the appellants' counsel, *Shepardson vs. R. R. Co.*, *supra*, is directly in point. In that case an injunctional order restraining the company from the occupancy of the plaintiff's land, and the prosecution of the work in constructing their road over the same, was dissolved by the judge at term, and on appeal to this court, the order dissolving the injunction was reversed.

The order of the circuit court must be reversed, and the case remanded for further proceedings.