KENNEDY vs. THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY, impleaded with others.

RAILROADS: *Liability of railway company to mortgagee of land taken for its road, where an agreed price has been paid the owner.—Pleading and practice in the foreclosure suit.— Valid and void provisions in a statute.*

1. A provision in a statute (as in sec. 2, ch. 280, Pr. Laws of 1856) that when an appraisement is had of land previously taken by a railroad company, it shall determine the value *at the time of taking*, is valid, although connected with a provision allowing the company to hold possession of the land, against the owner's will, before making compensation—which is void.

2. Where a railroad company, on taking land for its road, paid the owner an agreed price for it, if, on foreclosure of a prior mortgage, a sale of the remainder of the mortgaged premises (or so much thereof as equity requires to be first sold to pay the debt) does not satisfy the mortgage, the company is entitled to relieve its land from the lien by paying its value at the time it was taken, with interest.

3. In such foreclosure, if the answer of the company does not show that the value of said land has been ascertained in the manner prescribed by the charter, and paid, it does not state a *defense*.

VOL. XXII.—38.

4. *It seems*, however, that the court may stay the foreclosure proceedings as to the land so taken, until its value has been ascertained *in the manner prescribed by statute for the appraisal of lands condemned by such company.*

APPEAL from the Circuit Court for *Columbia* County.

Foreclosure of a mortgage of land. The complaint and prayer for relief were in the usual form, and the railroad company was made defendant as having or claiming some interest in or lien upon the premises, or some part thereof, which interest or lien, if any, is alleged to have accrued subsequently to the mortgage. The plaintiff appealed from an order overruling his demurrer to a part of the answer constituting a separate defense; the nature of which will appear from the opinion of Mr. Justice COLE, *infra.*

*E. Mariner*, for appellant, argued that the statute (Laws of 1852, p. 326) puts the land-owner by compulsion into the situation of a fair man who is willing to sell the company at a fair price so much of his land as it needs; but it does no more. *M. & M. R. R. Co. v. Eble*, 4 Chand., 74; *Shepardson v. M. & B. R. R. Co.*, 6 Wis., 605. At the common law, whatever was voluntarily annexed to land, without any contract with the owner for its removal, became parcel of it; and this in equity as well as at law. *Smith v. Goodwin*, 2 Greenl., 173; *Van Pelt v. McGraw*, 4 Coms., 110; *Frankland v. Moulton*, 5 Wis., 1; 1 Hilliard on Mort., 206, 431, and cases there cited. The legislature has not by express enactment either changed this rule or excepted railroad companies from its effect. Nor has this court. On the contrary, it has affirmed in the strongest language its intention to hold such corporations to the strict rules of law. *Hill v. The La Crosse & Mil. R. R. Co.*, 11 Wis., 214.

*David S. Ordway*, on the same side, to the point that the same rule applies to railroad corporations as between individuals, in respect to fixtures attached to mortgaged land, cited in addition *Northern Indiana R. R. Co. v. Con-*

*nelly*, 10 Ohio St., 159, and cases there cited; *P. & W. R. R. Co. v. Wright*, 2 R. I., 459. And the reason is, that railroad property is as much private property as that of individuals, and the rights concerning it the same, although the *use* of it is *quasi* public. 21 Conn., 294. That it was long since supposed that the common law rule would apply as to fixtures placed on mortgaged premises by railroad companies, is shown by the fact that the English Railway Act of 1845 (1 Shelford on Railways, 345–6) provides expressly for such cases, and that upon re-condemnation, the value of the improvements shall be excluded. So New York statutes of 1847, 2 R. S., 695. So also in this state, ch. 175, Laws of 1861. If a railway company should construct its track on my land *in trespass*, it could not take it off; and ejectment would lie at my suit. 14 M. & W., 687. 2. The judgment in this suit must be for a *sale*, and of the whole mortgaged premises, if necessary (R. S., ch. 145, sec. 1; Laws of 1859, ch. 195, sec. 5); but this court is requested to decide whether it shall be sold *with* the track, ties, rails and other improvements as fixtures, or subject to the right of the company to remove all such fixtures. If the latter, then as soon as we get the deed, the company can take steps to re-condemn as against us, and leave its fixtures on the land, or take them off, as it chooses. But it should not be permitted to prove in this action the value of the strip of land used by it, and exclude it from sale; because that will complicate the issue; and, moreover, we do not believe the court is authorized to render such a judgment. Arbitrators, to be chosen as directed by the charter (Laws of 1852, ch. 198, sec. 13), are to determine the value upon actual inspection of the premises, and upon such evidence as the law permits.

*Jno. W. Cary*, for respondent.

The following opinion was filed at the June term, 1867:

COLE, J.   This is an appeal from an order overruling a demurrer to a portion of the answer.   The action is to foreclose a mortgage given by the defendants *Gould and wife*, on the 9th day of March, 1854, to the La Crosse & Milwaukee Railway Company, to secure the payment of $2,500; which mortgage has been assigned to the plaintiff.   In the answer, among other matters, it is alleged that the La Crosse & Milwaukee Railway Company (to whose rights the respondent has succeeded as therein stated), in 1856, located its road across the mortgaged premises, and exercised the power conferred upon it by its charter, of taking land for the use of its road; and. after taking a strip, agreed with the persons then owning the title in fee, for a valuable consideration then paid, to convey to said company said strip of land, upon which its road has been built and constructed, and which now constitues a part of the railroad from Milwaukee to La Crosse.   It alleges that the value of the strip of land thus taken for the use of the road is very small as compared with the costs and expenses of building the railroad across the same, and the improvements made thereon by the company; and that a sale of the premises, and dispossession of the respondent therefrom, under the foreclosure action, would result in a great and irreparable injury to it.   The relief asked is, that, if the mortgage is a lien upon the premises, such premises may be sold in the inverse order of alienation, and that it may be referred to a commission of court to ascertain and report the value of the premises conveyed to the La Crosse & Milwaukee Company for right of way, exclusive of the improvements made thereon by it or its successor, and that said premises may be discharged from the lien of the mortgage upon the respondents paying the value thereof, or so much as may be necessary to satisfy the mortgage debt after the application of the moneys arising from the sale of the other portions of the mortgaged property.

From these allegations it will be seen that the railroad company located its road over lands previously mortgaged, having agreed with the owners of the equity of redemption as to the amount of compensation to be paid; and has paid the consideration agreed upon, and taken a conveyance of the right of way; and now the interesting question arises, What other or further compensation must the company make for this right of way? On the one hand, it is claimed that the company took the strip of land for the use of its road under the right of eminent domain conferred upon it by its charter, and that the only compensation it is now required to make is the value of the property taken, as of the date of its taking, and interest upon that amount. On the other hand, it is insisted that the railroad track and superstructure are for the benefit of the holder of the mortgage; that they, like industrial accretions, have become permanently annexed to the freehold, and, if necessary, should be sold to satisfy the mortgage debt. Must, therefore, the same rules of law govern which are applied to a case between individuals where fixtures are placed upon mortgaged premises? It is a familiar rule that all buildings erected and fixtures placed upon mortgaged premises by the mortgagor become a part of the realty, and, so far as they enhance the value of the estate, enure to the benefit of the mortgagee by increasing the security for his debt. Do the railroad track and superstructure, under the circumstances stated in the answer, come under the same rule of law? Must they be regarded as " industrial accretions," annexed to the freehold for the benefit of the mortgagee, and liable to be sold to satisfy the mortgage? It seems to us not.

When we consider the nature of the rights vested in the railroad company by its charter, the purposes for which these rights are conferred by the legislature, and the great

interest the public has in the successful operation of the road, it seems to us that all the rules and analogies of law which control as between individuals cannot be strictly applied to such a corporation. Of course, the most peculiar and distinctive power conferred upon the corporation is the right of taking private property for the use of the road upon making just compensation therefor. In this case, the charter required the company to agree with the owner, if possible, as to the amount of compensation to be paid for the lands taken, and in the event it could not agree with such owner, then the amount of compensation was to be ascertained as therein provided. Chap. 198, Laws of 1852; chap. 280, Pr. Laws of 1856. It seems that the company was able to agree with the persons in possession and owning the land, as to the amount of compensation, and took a conveyance from them of the right of way. But this mortgage lien was then outstanding. Had the company, instead of agreeing with the persons in actual possession and control of the land as to the amount of compensation, submitted that question to arbitration in the manner provided by the charter, the mortgagee would have been bound by the appraisal. And had the company, through mistake, paid this compensation to the parties in possession, when it should have paid it to the mortgagee, the only consequence would be that it would have to pay it over again to the right party. When the company obtained the right of way, it could not assume that the mortgage would not be paid by those under obligation to pay it. Of course, it incurred the risk that it might ultimately be enforced against the mortgaged premises. But in the event it should be enforced, it seems to us that all equity requires the company to do is to make compensation by paying the value of the land at the time it was taken, and interest on that amount. This appears to us more just and equitable than to say that

there shall be no apportionment of the lien, but that the holder of the mortgage may enforce it to the full amount of his debt by selling the road track, superstructure and fixtures placed upon the land at great expense by the company. See the case of *Daws v. Congdon*, 16 How. Pr. R., 571. It was further insisted that the company should be required to pay the value of the land when appraised, and not its value when taken by the company, so as to give the mortgagee the benefit of any increase in the value. But suppose it should turn out that the land was worth much less now than when taken by the company, upon what rule should compensation then be made? Upon the facts of this case we think the true rule should be, the value of the land when taken, and interest upon that amount. And we place it upon the ground that the company purchased the right of way from the owners in possession and owning the land. Whether another rule should not be applied in a case where the company neglects to acquire the right of way, we do not decide. Possibly in the latter case, if there was any increase in the value of the land after it was appropriated for the use of the road, the company would be required to pay its value when appraised. But when the company has purchased the right of way, and neglected to have a mortgage lien discharged, so that it has to make further compensation, then we think it ought only to pay the value when taken, and interest upon that sum. And this is obviously the principle upon which the charter contemplates that the assessment shall be made, since it provides that the "commissioners, or a majority of them, shall make an appraisement and award of the value of the land so entered upon, taken, possessed, occupied or used by said company for any of the purposes aforesaid, *at the time when the same was so entered upon and taken, whether such time was before or subsequent to the passage of this act * * ."* Section 2, chap. 280, *supra*.

The relief asked is, that it be referred to a commissioner to ascertain and report the value of the premises conveyed to the company for right of way, exclusive of the improvements, and that upon the payment of this amount, thus ascertained, the strip taken be released from the lien of the mortgage. We do not think a reference in this way is the proper mode to ascertain the compensation to be made. The company should proceed under the provisions of its charter, and have the land appraised by commissioners. The general rule upon the subject is, that the statutory method of ascertaining the amount of compensation must be followed; and we have so ruled in a number of cases where the question has arisen. We can see no sufficient reason for departing from this practice in the present case, even if it be true, as contended by the counsel for the respondent, that a court of equity has authority to make the reference—a position by no means clear. The provisions of the charter are ample and adequate for the purpose of appraising the value of the land; and why not resort to them to fix the amount of compensation? We think they furnish a much better mode than a reference out of chancery. At all events, it is the mode prescribed by law. And it is evidently the practice contemplated by chapter 175, Laws of 1861, which provides that where the title to any land taken by a railroad company for the purpose of its road, becomes invalid by reason of any mortgage or other lien affecting it, the company shall have power to *cause compensation to be made therefor in the manner provided by law or the charter of the company.* The court might, if deemed necessary, protect the company in its possession of its road pending the proceeding to ascertain the amount to be paid. This could readily be accomplished by a stay in the foreclosure suit, so far as the strip of land taken by the road was concerned.

The company, in asking for a reference to ascertain the

amount of compensation, has demanded a different relief from that which the facts of the answer—admitted by the demurrer to be true—would warrant. But this relief, as it is not a matter which goes to the ground of defense, and respects the event merely, is not a ground of demurrer. *State v. Smith*, 14 Wis., 565. In *Leonard v. Rogan*, 20 Wis., 540, where a plaintiff demanded equitable relief, when, upon the facts stated in the complaint, he should have asked judgment at law for damages, yet the court held that he should have judgment appropriate to the case made in the complaint, and that the action should not be dismissed.

*By the Court.*—The order is affirmed.

Mr. Justice DOWNER took no part in the decision of this case.

The plaintiff moved for a rehearing; and the same was granted, and the following opinion filed, at the February term, 1868:

PAINE, J. We have concluded that we must grant the motion for a rehearing in this case. It is not, however, because we have any doubt as to the correctness of the opinion already filed, upon the main point in controversy, which is the right of the company to have the land taken appraised in the method pointed out by the charter, at the value it had when taken, exclusive of the improvements put upon it by the company. The reasons for sustaining this right are well stated in the former opinion, and will not be repeated.

It is said by counsel, in the argument for a rehearing, that the former opinion " lays stress upon the provisions of the law of 1856, which provides what compensation shall be made." If that law is valid, and applicable to the question, it is entitled to have stress laid on its provisions; for

they are very clear and specific upon this point. It says expressly that the commissioners shall make an appraisement of the value of the land, " at the time when the same was so entered upon and taken, whether such time was before or subsequent to the passage of this act," etc. The argument impliedly concedes that if this provision is applicable, it disposes of the question. But it is said to be inapplicable, for the reason that this court has held void the section which contains it, being section 2, chap. 280, Laws of 1856.

We do not so understand it. It is true, this court has held, in *Shephardson v. R. R. Co.*, 6 Wis., 612, *Powers v. Bears*, 12 Wis., 222, and other cases, that similar provisions are inadequate to authorize a company to take and hold possession of land against the will of the owner without first making compensation. If it attempted to hold permanent possession without this, the owner was entitled to an injunction. But it has nowhere been held that if, after the company had located its route, it should then procure the appointment of commissioners, and obtain an appraisal of the value of the land taken, and tender the amount to the owner under a charter like the one in question, this would not give it the right to enter upon it and hold possession afterwards. Thus in *Shephardson v. R. R. Co.*, 6 Wis., 612, the court says : " We are of opinion that this act, so far as it attempts to authorize the taking and use of the land of individuals by the company, without making any compensation or providing any means by which compensation can be obtained by those whose property is taken, is repugnant to the section of our constitution above cited." This, by its terms, confines the invalidity of the act to that part of it which authorized the company to take and hold possession without making compensation. But this being conceded, it by no means follows that the mode of ascertaining the

compensation therein provided was invalid.    It is true, the court in that case, in a subsequent part of the opinion, assumes that the provisions of the act in regard to taking land were entirely inoperative, and therefore the provisions of the former act, of which it was amendatory, were not repealed.    But that question does not appear to have been involved in the case.    And that conclusion did not follow from the real point decided.    Whatever effect, therefore, that intimation might have in respect to the charter there involved, we do not think it should be regarded as settling the question in respect to other charters.    Neither that act nor the act here in question was liable to the objection that existed in the case of *Powers v. Bears.*    The appraisers in the Shephardson case were to be appointed by the circuit judge, in this by the supreme court or one of the judges. This must be held to secure a fair, impartial appraisement. And where this is provided for, we can see no reason for saying that if a company resorts to it, and pays or tenders the amount awarded, this would not be a valid proceeding, and give the right to take possession afterwards, even though other provisions in the same act, which attempted to give the right to take and hold possession without doing this, should be held void.

.This view is entirely in harmony with the decision in *Loop v. Chamberlain,* 20 Wis., 135, where this same act was to some extent in question.    The counsel for the company there suggested that the act was void.    But the court does not so intimate.    On the contrary, it seems to assume that the company might proceed under it and secure a proper appraisement, and then, by tendering the amount, get the right of possession.    And it held that until this was done the company was liable in trespass.

If, then, the provisions of this act prescribing the mode of appraising the value of the land, which, of course, would

include everything that the owner was entitled to receive as compensation, are valid, it follows that the clause above quoted, confining the value to the time when the land was taken, is also valid, and establishes clearly the legislative intent to except these cases from the common law rule that industrial accretions enure to the benefit of the owner.

I think such an exception would be fairly implied from the very nature and object of the right of eminent domain, which is delegated to these companies, as was held in the former opinion. I should be willing to rest the conclusion upon that ground alone, if necessary. Titles are often complicated; and the proceedings to divest title must comply strictly with the statute. And it is not to be supposed that where the state delegates to one of these companies its power of eminent domain, and authorizes it to take the land of individuals for the construction of great public works, it intends that in every case of failure to acquire a perfect title, the value of all the improvements constructed in the meantime should enure to the benefit of the owner. Upon the reasoning of the appellant's counsel, if a company should enter upon land, after defective proceedings to obtain title, and build a costly depot or bridge, if it afterward became necessary to resort to new proceedings to ascertain the damages, the owner would be entitled to have the depot or bridge estimated according to its value, and to be paid accordingly. Such a conclusion is contrary to natural justice. It is not at all sustained by the decision in *Hill v. La Crosse R. R. Co.*, 11 Wis., 214. It was there claimed that a railroad company should be exempt from the operation of the mechanics' lien law; that it should be allowed to absorb the labor and materials of another, without being subjected to the remedies which the law gives to secure payment. We held that it was entitled to no such exemption. But it is here claimed that the land owner should be

entitled to absorb the labor and materials of the company, without payment and without remedy. The same principle of justice which prevented the result claimed in that case should prevent that claimed here.

The common law rule was founded upon transactions between private individuals. It undoubtedly, in many cases, worked great injustice and hardship. This has been remedied to some extent by the law allowing one who has in good faith made improvements on real estate, believing he had a good title, compensation on being ousted under a better title. But without any statute establishing an exception, it ought not to be held applicable to a case involving an exercise of the right of eminent domain, in the execution of works of sufficient public interest to justify invoking that right.

I think, therefore, that the case is not only without the reason and beyond the scope of the common law rule, but that it has a statute creating it an exception.

If the conclusion were to be rested upon the statute alone, it might be necessary to show that the improvements in question were placed upon the land after its enactment. Counsel admits that such was the fact, though he says it does not appear, as I believe it does not.

But notwithstanding we adhere to the former opinion upon the real merits of the controversy, we have determined that the motion for a rehearing must be granted, for the reason that it seems to us that the facts stated do not constitute a defense. The company has not yet proceeded under its charter to obtain an appraisement. And it would seem that therefore the facts stated can at most be held ground for a stay of proceedings until those steps can be taken. The court cannot grant the relief sought until that is done. That portion of the answer seems therefore to be, strictly speaking, demurrable. And the re-argument that

is ordered will be confined to the question, whether, admitting the right of the company to have the lands appraised at the value when taken, exclusive of the improvements, the answer does not still fail to show a right to the relief sought, because it does not show a proper appraisement under the charter, with a readiness to pay the amount.

*By the Court.*—Rehearing granted.

At the same term, without further argument, the order of the circuit court was reversed, with costs, and the cause remanded.