THE STATE, CHARLES E. BUTLER, TRUSTEE, &c., PROSECUTOR, v. THE RAVINE ROAD SEWER COMMISSIONERS.

1. The act of 1875, (*Pamph. Laws, p.* 621,) for the condemnation of lands for the construction of a sewer, provided the following method of compensation to the owner of condemned lands: The commissioners appointed to make the award were empowered to issue improvement certificates, in their own names, in payment of the award, payable at such times as they might therein designate, not exceeding two years. *Held,* that the act did not provide a constitutional method of securing compensation to the land-owner.

2. There is no power in the legislature to provide for the payment of the award in anything but money, nor to postpone the right of the land-owner to receive the same after the award becomes a finality.

---

This *certiorari* brings a certain order of appointment of commissioners to appraise lands and assess damages and compensation for taking the same for the Ravine road sewer.

Argued at June Term, 1877, before Justices SCUDDER, DIXON and REED.

For the prosecutor, *Flavel McGee.*

For the defendant, *J. C. Besson.*

The opinion of the court was delivered by

REED, J.   This writ is sued out to test the validity of an order made in a proceeding to condemn lands for a public purpose.   The proceedings of which this order is a part, are taken under an act (*Laws*, 1875, *p.* 621,) to provide for the continuation of the Ravine road sewer, in Jersey City and city of Hoboken.

The act provides for the appointment of commissioners to construct a sewer.   The commissioners have, by the act, authority to appoint a surveyor, and cause to be made maps, &c.   That in case the said commissioners cannot agree with the owners of such required land, then, upon making a description of the land and giving certain notices, a justice of the Supreme Court shall appoint three disinterested, impartial and judicious freeholders, &c., to assess the damages to landowners, to be paid by the commissioners as provided by the second section of the act.

Application having been made to Justice Knapp, he, on the 5th of May, 1877, appointed said commissioners to make such assessment and appraisement for the lands in said order described.   This order is attacked upon the ground that the act under which it is made is void, as it directs the taking of these lands, without providing compensation in the manner enjoined by the constitution.   The method of remuneration for the lands taken, provided by the act, is as follows:  The commissioners are empowered to "issue" improvement certificates, in their own names, in payment therefor, therein and thereby pledging the faith and credit of the said cities of Jersey City and Hoboken respectively, payable at such times as they may therein designate, not exceeding two years from the date of issue, bearing interest at the rate of seven per cent. from the date of issue.

By a subsequent act, (*Laws*, 1877, *p.* 170,) it was provided

in substance, that whenever the said improvement certificates should, in the hands of any one holding them, represent in value the sum of $1000, then the authorities of said cities should issue to said holders bonds of said cities respectively, in value equal to the representative value of said certificates. The only question mooted is whether this act contains a provision for securing to the land-owner the compensation in the manner enjoined by the constitution. The control of every citizen over the disposition of his property is complete and undisturbable, excepting in the instance of the exercise of the superior right of the government to appropriate and control it for the public benefit. The existence of this power is recognized only upon the ground of necessity, and for the purpose of modifying the vexatious feature of its exercise, the state governments have thrown around its enforcement a provision that the land-owner shall be compensated for his loss.

In this state this protection is secured by Paragraph 16 of Article I. of our constitution—private property shall not be taken for public use without just compensation. And by the further provision, in Paragraph 9, of Section 7, of Article I., individuals or private corporations shall not be authorized to take private property for public use, without just compensation first made to the owners.

Where the constitution is silent relative to the manner in which this compensation shall be made and the property appropriated, the power to appropriate is dormant until the legislature supplies the plan. The most essential feature of this plan is the method provided for securing to the land-owner just compensation. Without such feature the statute is insufficient to support a proceeding for condemnation. *Carson* v. *Coleman*, 3 *Stockt.* 106; *State, Kerrigan, pros.,* v. *West Hoboken*, 8 *Vroom* 81; *Bradshaw* v. *Rodgers*, 20 *Johns.* 103.

And the land-owner is entitled to have the judgment of the law upon the project, without waiting until the appropriation of his property is attempted in point of fact. *State, Gaines, pros.,* v. *Hudson County Avenue Commissioners*, 8 *Vroom* 12.

The plan provided by the act of 1875, for ascertaining the amount of compensation, is not attacked. The manner in which it is to be satisfied after its ascertainment, is the feature of the statute which is now questioned. The method provided is by the issuance of certificates of indebtedness to the landowners, payable at the election of the commissioners, at any time within two years. These are, where one person holds $1000 worth of them, exchangeable for bonds. This is the only provision, and if it fails to fill the constitutional requirement of providing just compensation, it leaves the act naked as to this material feature, and insufficient to support the proceedings, of which this order is a part.

It seems to be the well-grounded opinion of those who have considered, as writers or judges, the nature of this compensation, that it must be monetary in its character. Says Judge Dillon : "Nearly all the constitutions provide that just compensation shall be made for the property taken, and that view is believed to be sound, which regards this language as necessarily contemplating compensation of a pecuniary character, in respect to the property appropriated." *Mun. Corp.*, § 477.

Judge Cooley thinks this compensation must be pecuniary, because it is in the nature of payment for a compulsory purchase. *Const. Lim.* 559. This idea of the compensation being the price of a compulsory sale, finds countenance in the view of Sir William Blackstone.

Speaking of the right to hold and enjoy private property, and the power of the legislature (there untrammeled by constitutional restrictions,) to take such property for the public benefit, he says : "The legislature alone can, and indeed frequently does, interpose and compel the individual to acquiesce. But how does it interpose and compel ? Not by absolutely stripping the subject of his property in an arbitrary manner ; but by giving him a full indemnification and equivalent for the injury thereby sustained. The public is now considered as an individual, treating with an individual for an exchange.

All that the legislature does, is to oblige the owner to alienate his possession for a reasonable price." 1 *Black. Com.* 139.

In *Fletcher* v. *Peck*, 6 *Cranch* 145, the court says : " The effect of the right of eminent domain against the individual amounts to nothing more than a power to oblige him to sell or convey when the public necessities require it."

That something other than money may be considered and accepted by the land-owner as an equivalent is undoubtedly true ; but it is equally true, that in all purchases and sales of property, money is the universal standard of value, and always in the mind in connection with the idea of price or compensation for property bought.

No other standard or medium of compensation can be within the purview of this constitutional provision when speaking of compensation for these compulsory purchases.

In *Carson* v. *Coleman*, 3 *Stockt.* 106, the Chancellor says : " There is but one construction to be put upon the language of the constitution ; it means that when private property is taken by virtue of the authority of the sovereign power, compensation is to be made in money." It is true that the Chancellor was then speaking of the power of the legislature to enact that benefits to the land-owner, which were common to all property owners, should be an equivalent for the land taken.

It was in denial of any such power that he made the assertion that the compensation must be pecuniary. It is also a fact, that while such common benefits are not a legal element in estimating compensation, yet, by the law as laid down by this court, the legislature can enact that benefits, peculiar to the land-owner alone, can be taken into consideration by the tribunal appointed to fix the price. *Loweree* v. *City of Newark*, 9 *Vroom* 151 ; *Swayze* v. *N. J. Midland Railway Co.*, 7 *Vroom* 295.

This, however, does not antagonize the position that the price or compensation must be pecuniary.

The consideration of special benefits, on the one side, and the injury to the remaining land, on the other side, is quite

VOL. X.                    2 x

distinct from making such benefits a part of the compensation. It is merely a question as to the manner of adjusting the amount of compensation which will, under the particular circumstances, be just. As every person selling land which is parcel of other land, is influenced in fixing his price, by the nature and permanency of the use of the part sold, through its influence upon the salable value of the remaining portion, so those who are adjusting the price for a compulsory sale under these proceedings, violate no constitutional right of the land-owner, when, under legislative sanction, they resort to similar considerations. The finding of the tribunal to which the question is submitted, is the price to which the land-owner is entitled. The analogy of a compulsory purchase requires it to be paid in money.

Besides the ordinary redress for occupancy or deprivation of property, is its return with damages or its money value. The constitutional requirement is imperative that a tribunal shall be provided to award the latter, in proceedings to condemn. *Bonaparte* v. *C. & A. R. R. Co.*, 1 *Bald. C. C. R.* 205.

That the finding of this tribunal, and the satisfaction of such finding, should be similar to that of all other courts, when affording redress for the deprivation of property, is the logical deduction from the required appointment of or indication of such a tribunal. The award is, when a finality like a judgment, the establishment of a money equivalent for the owner's loss. It is a debt, and can be liquidated only by the payment of that which is recognized as money.

It is urged that this award is eventually payable in money. That the time of payment is only postponed, and in the interval the land-owner receives legal interest as a remuneration for the delay.

I do not think this is a valid answer to the objection raised to the character of the award under this act. The award contemplated by this act has no force as a debt. It places a lien upon nothing. It is not payable in money. No suit can be brought upon it as an award. It merely imposes a duty upon

the commissioners to issue the certificates of indebtedness, and thereby pledge the faith of the two cities. These certificates are, under the act, the first evidences of any indebtedness, and may or may not have a money value equal to the amount represented by the award.

But were it true that the design of this act is only to postpone the payment of the award, I do not think that there is power in the legislature to deny or defer the right of the land-owner to demand payment whenever the award becomes a finality. That payment, or the right of payment, need not always be simultaneous with the occupancy of land by the public, cannot be controverted.

Wherever the state itself, or one of its branches, has provided a method by which the land-owner can secure compensation, that only is essential to confer upon them the authority to immediately occupy. *Loweree* v. *Newark*, 9 *Vroom* 151; *Wheeler* v. *Essex Road Board*, *ante p.* 291.

There may be instances where the exigencies of the state are such that it would effect great inconvenience to delay until the judicial proceedings taken to fix the compensation are determined.

In view of this and the fact that, when the state or a municipality is the party condemning, there is supposed to be ample security for the payment of the award, payment is not a condition precedent.

But the idea that the payment can be deferred beyond the period required to fix the amount of compensation by a judicial proceeding, is opposed to all judicial sentiment as to the owner's rights. We have seen that the legislature is obliged to indicate a tribunal for the establishment of the amount of compensation. *Gardner* v. *Village of Newburgh*, 2 *Johns. Ch.* 162; *Powers* v. *Bears*, 12 *Wis.* 213; *Bonaparte* v. *C. & A. R. R. Co.*, 1 *Bald. C. C. R.* 205.

That it must be a remedy to which the party can resort, of his own motion, or compel the movement of the municipality by *mandamus*. *People* v. *Heyden*, 6 *Hill* 359; *Cooley on Const. Lim.* 56.

And it would seem that the course of the proceeding must be reasonably expeditious. In *Bloodgood* v. *Mohawk & H. Railroad Company*, 18 *Wend.* 9, the rule is stated to be that certain and adequate provision must first be made by law, (except in cases of emergency,) so that the owner can coerce payment through the judicial tribunals without any unreasonable or unnecessary delay.

In *Ash* v. *Cummings*, 50 *N. H.* 591, it is said, that where the state, or county, or town, may be made liable for the damages, it is not so important that compensation should be paid in advance, provided the law provides a certain and expeditious way of ascertaining and recovering it, because these municipalities are always responsible. The language of Judge Dillon as to the necessity of a provision by which compensation can be coerced without unreasonable delay, is in the same direction. *Mun. Corp.*, § 480.

Indeed, so just and strong is the sentiment that the constitution intends a speedy compensation, that I have little doubt that, if the proceeding provided for the ascertainment of this compensation was attended with extraordinary delay, with unusual and vexatious features, with numerous steps of procedure, having long intervals intervening, with burdensome and vexatious conditions of appeal, and long periods of time for taking the appeals, that such a proceeding would fail to provide the constitutional method of ascertaining just compensation.

But whether this is or is not so, I am clear that, when the amount of compensation is once fixed, the owner, as constrained vendor, is entitled to receive his price. The previous delay is justifiable alone upon the ground that the price must be ascertained before it can be paid or tendered.

When it is ascertained, all reason for delay ceases. The power of the municipality to command money is supposed to be ample. It was upon that supposition that their right to occupy before actual payment was originally placed. The power to postpone his right to receive the price for one day, or to substitute for it something other than money, is a power to postpone payment so long that the land-owner may be

ruined, and to pay in something of little pecuniary value at the time of its reception.

Such a power existing in the legislature, would annul the significance of the provisions designed to protect and guard the rights of the citizen whose property is condemned.

I think the attempt to exercise such a power in this act is clearly inimical to the constitutional provision, and that the act itself does not provide a method of compensation within its purview, and is, therefore, insufficient to support any proceeding for condemnation.

The order brought up as a part of these proceedings must be vacated, with costs.