# THE CALUMET RIVER RAILWAY COMPANY *et al.*

## *v.*

## JOHN B. BROWN.

*Filed at Ottawa January 22, 1891.*

1. EMINENT DOMAIN—*mortgaged premises—mortgagee as party.* The holder of a recorded mortgage upon real estate sought to be condemned for a right of way for a railroad, is such an owner or interested party as should be made a party defendant to the proceeding to condemn; and if he is not, he will not be concluded by the compensation and damages awarded.

2. SAME—*damages applied on mortgage debt—rights of the respective parties in interest.* Where a railway company seeking the condemnation of land for a right of way, by mistake fails to make the holders of a mortgage thereon parties to the proceeding, and such company is not chargeable with negligence in failing to make the mortgagees parties, and compensation and damages are awarded to the mortgagor on the hypothesis that the land taken and damaged is free of incumbrance, and when it appears that the mortgagor's equity of redemption is of little or no value, and that the judgment is no protection to the company against a bill to foreclose the mortgage, a court of equity may relieve the company against the consequences of such mistake by requiring the compensation and damages awarded to be paid to the mortgagee, to apply on his debt.

3. Where the power of eminent domain is exercised, the money paid for compensation and damages will stand in the place of the land condemned, so far as incumbrances are concerned. If the land condemned and damaged is mortgaged, the lien of the mortgage will attach to the fund, and the mortgagee will be entitled to have the condemnation money in place of the land applied to the payment of his claim.

4. Where land is condemned for right of way, without making the holder of a mortgage thereon a party, so that the latter will have the right to take the condemnation money, or proceed to foreclose his mortgage, at his election, the company which condemned the land and paid the compensation and damages awarded, may, by bill in equity, require the application of the money to the mortgage debt, before resort is had to the land.

5. As between mortgagor and mortgagee, condemnation money paid belongs to the latter to the extent of the mortgage debt. The mortgagor will receive the benefit of this application in reduction of his debt.

6. A mortgagee of land not made a party to a proceeding to condemn, can not be compelled to receive the condemnation money in full of his demand. After payment of such money to him, he should be left free to assert his right to a larger sum by any appropriate remedy of his own selection, if he thinks such sum is not sufficient.

7. SAME—*condemnation of mortgaged premises—rule of adjustment— as to improvements.* After the execution and delivery of a mortgage to secure a debt equal to or larger than the value of the premises, a railway company instituted a proceeding against the mortgagor to condemn a strip of the land for its right of way, neglecting to make the mortgagee a party. The judgment of condemnation directed payment of the condemnation money to the county treasurer, "for the benefit of the owner, or to J. B." (the mortgagor.) The company, on learning of the mortgage, filed its bill to enjoin payment to the mortgagor, who was alleged to be insolvent, and to have the money paid to the mortgagee. The decree ordered payment of the money to the mortgagee, and allowed a re-assessment of damages in favor of the mortgagee, and directed, that in case of a foreclosure the mortgaged lands be sold in the inverse order of alienation, treating the condemnation of the right of way as an alienation, and that upon such re-assessment the company should not be required to pay for costly improvements placed by it upon the right of way, but only the value of the land when it was first taken.

8. Ordinarily, fixtures placed upon mortgaged premises by the mortgagor become a part of the realty, and inure to the benefit of the mortgagee, by increasing his security. But it has been held, in case of condemnation of mortgaged premises for railroad purposes, that on a foreclosure the mortgagee should not be allowed to sell the road track, superstructure and fixtures placed thereon, for the reason the public have an interest in the successful operation of the road.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This is a bill filed on August 7, 1888, in the Circuit Court of Cook County by the Calumet River Railway Company, one of the appellants herein, against the appellee, Brown and his wife, and the appellant, George R. Davis, the latter being the County Treasurer of Cook County, and also against one Richard C. Dale of Philadelphia, Penn., and four persons, composing the firm of Drexel & Co. of said city of Philadelphia.

The bill, as originally filed and as subsequently amended, sets up certain proceedings, theretofore begun and prosecuted by said Railway Company in the County Court of Cook County against the said Brown for the purpose of condemning, for railroad right of way and depot grounds, a strip of land in a certain Block B in South Chicago, resulting in verdict and judgment for $17,500.00, of which $4600.00 was for the land actually taken and $12,900.00 for damages to the part of Block "B" not taken. Brown took an appeal from the judgment to this Court, and the decision of this Court therein is reported as *Brown* v. *Calumet River Ry. Co.* 125 Ill. 600. In accordance with the terms of the judgment the Railway Co. paid the money into the hands of Davis as county treasurer, and entered upon the use of the land condemned upon executing and filing the bond required by section 13 of the Eminent Domain Act.

The bill further alleges that, while the appeal was pending in this Court, the complainant learned for the first time of the existence of a mortgage, dated July 12, 1884, recorded in the recorder's office of Cook County on July 28, 1884, executed by Brown and wife to the said Richard C. Dale to secure the said Brown's note of the same date with the mortgage for $150,000.00, payable to the order of Dale in thirteen months after date, and covering said Block "B" and other property; that, before filing its petition in the condemnation proceeding, complainant applied to Handy & Co., conveyancers and makers of abstracts of title in Chicago, to ascertain the names of all persons interested in said Block "B," and was furnished by them with a list purporting to contain all the names of the persons interested therein, from which, however, the name of said Dale was omitted; that complainant, relying upon the correctness of the list so furnished to it, omitted to make said Dale a party to the condemnation proceeding; that, upon learning of the mortgage, complainant, at once and on April 6, 1888, notified the county treasurer that the money, which

had been paid to him on March 7, 1888, was for the use and benefit of Dale as well as Brown; that Dale was represented in Cook County by his attorney, Andrew Crawford; that Crawford was present at the trial of the condemnation suit to look after the interests of Dale; that Brown applied to the County Court to get possession of the money, but failed, and has been trying to get said money without producing to Davis a release of the right of way from the mortgage; that complainant fears that Brown may obtain the money without such release, and that it would be inequitable to permit him to do so, and, if he did so obtain the money, complainant would be again liable to pay said money or a portion thereof; that the mortgage is past due and the land therein described is not sufficient in value to satisfy the debt; that Brown is wholly irresponsible and no judgment at law can be enforced against him; that Drexel & Co. are interested with Dale in the ownership of the note and mortgage, and are combining with him and Brown to have the money paid to Brown, and, at the same time, hold complainant's right of way liable for the mortgage. The prayer of the bill is that the mortgagees may be required to release the right of way from the lien of the mortgage before the payment to them of the fund in the hands of the county treasurer; that Davis may be restrained from paying the money to Brown without the release or receipt of the mortgagees; that Brown may be restrained from receiving the money until he produces a release of the right of way from the mortgage; that complainant "may have such other or further relief in the premises as the nature of this case may require and to your Honors shall seem meet."

Brown answered the bill and also filed a cross-bill, and, in one or both of them, admits the execution and recording of the mortgage for $150,000.00, and that it is past due, but avers that it has been extended, and also alleges that he was the sole owner in fee simple absolute of the whole of Block "B" at the time of the condemnation proceeding; that he alone

defended the said condemnation suit; that, when said suit was begun, the mortgage was on record and the railway company was guilty of negligence in not making Dale a party; that the company has received a consideration for the money in the possession and use of the right of way and has no further interest in it; that the company admitted defendant's title and ownership on the trial of the condemnation suit and is estopped by the petition and judgment therein from denying defendant's right to the money; that defendant does not intend to produce the release above referred to and claims to own the $17,500.00 and to be entitled to receive it; denies that Crawford was attorney in the condemnation suit, but admits that he is Dale's agent; denies that he, Brown, is irresponsible, or that the land is insufficient in value to pay the mortgage debt, or that he is combining for any purpose with the mortgagees; avers that he is the only person in whose favor the judgment was rendered and whose interest in the land was condemned; that he was never applied to for information about the encumbrance and is not responsible for the company's mistakes. Brown prays in his cross-bill against the company and Davis, that the money may be decreed to belong to him, and that Davis may be required to pay it to him with interest from the time of his first demand for it.

Davis answered the original and cross-bills admitting the possession of the money, but disclaiming any interest in the matter except to pay the money to the party lawfully entitled to it, and denying that any demand for it was made upon him after the appeal to this Court was disposed of.

Dale and the members of the firm of Drexel & Co. filed no answers, although they were served by publication and by the mailing of notices to them in accordance with the requirements of the statute, and default was duly entered against them.

After hearing had upon the original, amended and cross bills, and the default of the mortgagees, and evidence intro-

duced by the Railway Company and Brown and Davis, the Circuit Court found the facts substantially as alleged in the original bill as amended, and decreed that the cross bill be dismissed; that the holders of the note and mortgage were entitled to the money in the hands of the County Treasurer and that the same should be paid to them; and that, in case of foreclosure, the sale should be made in the inverse order of alienation by Brown, treating the condemnation as a sale by him, and, if the mortgaged premises exclusive of the land condemned by the Company should be insufficient to pay the indebtedness after application of the $17,500.00, and all monies realized from sales, so that recourse must be had to the condemned land, then the $17,500.00 should be applied as compensation for the land taken and damages to the balance of Block B not taken, and an issue out of chancery, or such other proceeding as the mortgagees might elect, should be made to ascertain the value of the land taken and damages for the remainder not taken as of the date when the right of way was taken by the company, the improvements subsequently placed thereon not to be valued against the company, and in case such value and damages should be found to exceed $17,500.00 at the time the land was taken by the company, then the company should pay to the holders of the indebtedness the amount of such excess, or such part thereof as might remain due upon such indebtedness, with interest from the time the land was taken to the time of payment. The decree also restrained the county treasurer from paying the money to Brown, or any other person than the holders of the note and mortgage to Dale, until the further order of the court, and ordered that Brown should pay the costs.

Brown alone took an appeal from this decree to the Appellate Court. The latter court reversed the decree and remanded the case to the Circuit Court with directions to dismiss the original bill and to render a decree against Davis and the railway company for the payment to Brown of the $17,500.00

with interest thereon at 6 per cent from October 6, 1888. The railway company and Davis bring the case here by appeal from the judgment of the Appellate Court.

Mr. FRANK J. LOESCH, and Mr. CHARLES A. ALLEN, for the appellant the Calumet River Railway Company:

Appellant is entitled to relief on the ground of mistake of fact. Freeman on Judgments, (3d ed.) sec. 500; 2 Pomeroy's Eq. Jur. 856; *Wilson* v. *Boughton,* 50 Mo. 17.

The mortgagee is the owner of the land, and the weight of authority is to the effect that the mortgagee, whether made a party defendant to a condemdation suit or not, is entitled to the award. The award is a fund standing as an equivalent for the land taken. *South Park Comrs.* v. *Todd,* 112 Ill. 379; Mills on Eminent Domain, sec. 74; *Bank* v. *Roberts,* 44 N. Y. 192; *Hoyt* v. *Aster,* 5 Wend. 603; *Insurance Co.* v. *Slee,* 123 Ill. 95; *Railroad Co.* v. *Chamberlain,* 84 id. 347; *Platt* v. *Bright,* 29 N. J. Eq. 128; 31 id. 81; 82 id. 362.

Mr. FORREST O. MURDOCK, for the appellant Davis.

Messrs. OSBORN & LYNDE, for the appellee:

It is the payment of the damages awarded, and not the order of the court, that gives the right to enter. *Cook* v. *South Park Comrs.* 61 Ill. 115; *Railroad Co.* v. *Teters,* 68 id. 144; *West Park Comrs.* v. *McCormick,* 118 id. 655.

The court ordered that the appellant might take possession on payment to the county treasurer, *for the use of Brown,* the sum of $17,500. In compliance with this order, appellant paid the money to the treasurer, and took possession of the land, and has ever since retained it. This completed the transaction.

The railroad company had the right to proceed without making the incumbrancer a party, if it chose to do so. It was under no obligation to remove his lien. All the interest which, by its petition, it sought to acquire, was that which

Brown held. It was not necessary for it to bring any other parties into court. *Bowman* v. *Railroad Co.* 102 Ill. 459.

If the railroad company made any mistake, it was its own, and it alone should suffer the consequences. *Insurance Co.* v. *Slee*, 123 Ill. 57.

Having brought the respondent into court by its petition alleging title to the premises in question to be in him, the railway company is estopped from denying or questioning his title. *Railroad Co.* v. *Laurie*, 63 Ill. 264; *Railroad Co.* v. *Teters*, 68 id. 144; *Railroad Co.* v. *Hopkins*, 90 id. 316; *South Park Comrs.* v. *Todd*, 112 id. 380.

The petitioner, after paying the money to the treasurer, has no right to stop its payment. The payment was not conditional.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In this case, the appellant railway company instituted the proceeding for condemnation of the land against the owner of the equity of redemption, and omitted to make the mortgagee a party to the proceeding. This omission was not due to the carelessness or negligence of the railway company, but was the result of a mistake. Section 2 of the Eminent Domain Act provides that the petition shall state the names of "all persons interested as owners or otherwise" in the property to be taken or damaged. The holder of a mortgage upon the property is such an owner or interested party as should be made a party defendant. Here, the mortgage to Dale was upon record when the petition was filed, and the name of the mortgagee thus appearing of record should have been stated in the petition for condemnation. In order to ascertain what persons were interested in or held liens upon the property, the company applied to a firm of abstract makers and convey-ancers, whose business it was to furnish information upon such subjects, and received from such firm a report as to the title which failed to give the name of Dale, or to show the

existence of the Dale mortgage. The company was thus mis-
led without fault of its own. It paid the whole amount of the
condemnation money into the hands of the county treasurer,
before it learned that there was a mortgage upon the property
condemned.

The mortgagees, Dale and Drexel & Co. who were interested
with him, must have known of the proceeding to condemn,
because their agent and attorney was present at the trial of
the condemnation suit. They did not, however, become parties
by filing a cross-petition as provided for in section 11 of said
Act. The appellee, Brown, the owner of the equity of redemp-
tion and the only defendant in the condemnation proceeding,
communicated no information as to the existence of the mort-
gage. Still, neither Brown nor the mortgagees were respon-
sible for the failure of the company to make the mortgagees
parties. It remains true, nevertheless, that the payment of
the money to the county treasurer would not have taken place
but for the mistake of the abstract makers as to the condition
of the record. Why should not equity relieve the company
from the consequences of such mistake?

Let us see what consequences might follow. The sum of
$17,500.00 paid to Davis, the county treasurer, was not the
value of Brown's equity of redemption only. It represented
the full value of the property taken and damages to the por-
tion of Block B not taken, the former being $4600.00 and the
latter $12,900.00. Brown insists upon the payment of all the
money to him, and if such payment should be made to him,
he would be receiving more than the value of his interest in
the property. Indeed it is questionable if his interest is worth
anything. The amount of the mortgage is $150,000.00, and
the proof shows that it exceeds the value of all the property
subject to it. The proof also shows that Brown's indebtedness
is not less than $500,000.00. The mortgagees not having
been made parties to the condemnation suit, their rights were
not cut off by that suit. They are still entitled to foreclose

their mortgage against the land condemned. If, therefore, the money is paid to Brown, the company may be compelled to pay for the land a second time by the foreclosure of the mortgage. Such a result as this would be inequitable in the extreme.

Where the power of eminent domain is exercised, the fund paid stands in the place of the land condemned; the lien attaches to the fund; "the rights of the mortgagee remain unaltered and he is entitled to have the money in place of the land applied to the payment of his claim." (1 Jones on Mortg. sec. 708; *C. B. & Q.* v. *Chamberlain*, 84 Ill. 333; *So. Park Com.* v. *Todd*, 112 id. 379; *Union Mut. Life Ins. Co.* v. *Slee*, 123 id. 57). It is true that Dale and Drexel & Co. have not filed a bill to foreclose the mortgage, although it is overdue; they have made no application to Davis to have the money paid to them, and have made no opposition to the payment of it to Brown, not being willing, according to the proof, to "make an enemy of Brown by doing it." But, at the same time, they are entitled to have the money as an equivalent of the land; their lien in equity follows the fund, which is a substitute for the land. (*Sherwood, Admr.* v. *City of Lafayette*, 109 Ind. 411). This being so, there is reason here for the application of the well-known principle, that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. (3 Pom. Eq. Jur. sec. 1414). Upon the assumption that the verdict and judgment would not have been more than $17,500.00 if the mortgagees had been parties, and subject to the other qualifications hereafter stated, the mortgagees may either take the money and apply it on their debt, or resort to a foreclosure of their mortgage against the land condemned and damaged. They have two funds, the money and the land. The appellant company has but one fund—the land condemned—, and, in equity, may require the application of the money to the debt before resort is had to the land.

Section 14 of the Eminent Domain Act provides that the compensation may, in all cases, be paid to the county treasurer, who shall, on demand, pay it to the party thereto entitled. The judgment in this case orders that the "petitioner pay to the county treasurer of Cook County for the benefit of the owner, or to John B. Brown, claimed to be such owner, the sum of $17,500.00." There is here no absolute direction to pay the money to Brown. The language is in the alternative, and contemplates that some other person than Brown may be the owner. Surely a court of chancery may determine who is the owner, for whose benefit the money was paid. As between the mortgagor and mortgagee, the fund belongs to the latter to the extent of the mortgage debt. As between Brown and Dale or Drexel & Co., the fund belongs to the latter inasmuch as the mortgage debt exceeds the fund. There can be no injustice in this view, as the appellee receives the benefit of the money when it is credited upon his debt. (*So. Park Com.* v. *Todd* and *U. M. Life Ins. Co.* v. *Slee, supra*).

It is said, however, that the mortgagees, not having been made parties to the condemnation proceeding, did not have their day in court, and had no hearing upon the question as to what was a just compensation to be paid by the railroad company. This is true, and the mortgagees are still entitled to such hearing; they are not bound to accept $17,500.00 as the exact and whole amount to be paid by the company without a chance to be heard upon that subject, either in a proceeding by the company to condemn their interest, or otherwise. (Mills on Eminent Domain, sec. 74; Lewis on Em. Dom. sec. 324; *Wilson* v. *E. & N. Railway Co.* 67 Me. 358). But are they not fully protected in this regard by the decree of the Circuit Court?

By the terms of that decree they are authorized to receive the $17,500.00 and have it credited upon their debt, and, if the balance of the debt is not paid and they are obliged to resort to a foreclosure, they are further authorized to have a

revaluation of the land taken and a re-determination of the damages to the land not taken, either by an issue out of chancery, or by some proceeding of their own selection, and, should the amount of a just compensation be thereby found to exceed $17,500.00, to have the excess applied upon the mortgage. It is claimed, however, that the decree is erroneous, under the doctrine laid down in *Union Mutual Life Ins. Co.* v. *Slee, supra,* where it was said, that proceedings to condemn property under the Eminent Domain Act, are legal and not equitable, and that it would be inconvenient for a court of equity to remit the matter of condemnation to a court of law for trial according to the rules and practice in trials at law. The statement thus made in the *Slee* case is correct as a general proposition and as applicable to the facts of that case, but it can have no application to the circumstances of the present case, as will appear from a brief examination thereof.

Here, the decree directs that, in case of a foreclosure of the mortgage, the property mortgaged shall be sold in the inverse order of alienation, treating the taking of the strip of land condemned by the company as an alienation. It is certainly in accordance with equitable principles, that the balance of the mortgaged land be sold first before resorting to the strip taken for railroad purposes. But it appears from the evidence in this case, that the appellant company has taken possession of the strip of land condemned by it, and has improved it, and built its right of way upon it, and is using the improvements. If, upon foreclosure, the debt is not paid by the sale of the rest of the mortgaged land, how is the lien to be enforced against the strip thus taken and improved? Shall the right of way be sold with the railroad tracks and other improvements upon it?

Ordinarily fixtures placed upon mortgaged premises by the mortgagor become a part of the realty, and enure to the benefit of the mortgagee by increasing his security. But it has been held that, in such a foreclosure as that now under consider-

ation, the holder of the mortgage ought not to be allowed to sell the road track, superstructure and fixtures placed upon the land at great expense by the railroad company, for the reason that the public has an interest in the successful operation of the road, and that, therefore, equity only requires the company to make compensation by paying the value of the land at the time it was taken, and interest on that amount. (*Kennedy* v. *The Milwaukee and St. Paul Ry. Co.* 22 Wis. 581; *Aspinwall* v. *The Chicago & N. W. Ry. Co.* 41 id. 474; *Wooster* v. *The Sugar River Valley R. R. Co.* 57 id. 311; *Wilson* v. *E. & N. Railway Co. supra*). Hence, some method must be adopted of ascertaining what the value of the land condemned was at the time when it was taken, exclusive of the value of the improvements placed upon it by the railroad company since that time. It would seem, that the proper method to be adopted for such purpose is the statutory method, or that prescribed by the Eminent Domain Act for ascertaining the amount of compensation. (*Kennedy* v. *M. & St. P. Ry. Co. supra*).

The decree of the circuit court, in the case at bar, conforms to the rule thus laid down in the Wisconsin cases, and may be regarded as correct so far as it has reference to the value of the strip of land taken. To what extent is it correct in requiring the amount of damages to the portion of Block "B" not taken to be also ascertained, and the excess thereof, if any, over the damages found by the jury in the condemnation proceeding, to be applied upon the mortgage debt? The verdict in that proceeding showed, separately, the value of the part of the block which was taken, and the damages to the part thereof not taken. The judgment also refers to the total amount as being for both value and damages. After the court of chancery has directed an issue at law to be tried to ascertain the value of the land taken exclusive of the improvements upon it, it could easily be determined at the same time, as an incident to such issue, what were the damages to the land not

taken at the time of the condemnation. As such damages had the effect of lessening the value of the land subject to the security of the mortgage, it would be equitable to credit them upon the mortgage debt.

But if the decree is erroneous in directing such damages to be ascertained, and the money now in the hands of the county treasurer is paid to the appellee, Brown, how are the mortgagees to receive the benefit of the damages in the event of a foreclosure? This is not a case where the condemnation money has already been paid to the mortgagor. The present bill was filed and an injunction was obtained while the money was yet in the hands of the county treasurer. If the money is paid to Brown, then when the foreclosure takes place the mortgagees will sell the land damaged but not taken at its reduced value; if there is no way under the foreclosure proceeding to ascertain the damages and require the payment of the same, then the mortgagees will be remitted to their action at law against the railroad company or Brown, the mortgagor. In *Wilson* v. *E. & N. Railway Company, supra,* where the mortgagee was not made a party to the condemnation proceeding and the condemnation money was paid to the mortgagor, the mortgagee was allowed to maintain trespass against the railroad company.

Consequently, if the decree of the Circuit court is erroneous in the particular now under discussion, it is difficult to understand why Dale or Drexel & Co. should object to it. It is favorable to them, in that it gives them a chance to show, if they can, that the value of the land taken was greater than $4600.00 and that the damages to the land not taken were more than $12,900.00, and gives them the benefit of the excess, if excess there is.

The mortgagees, however, are not objecting to the decree. Decree *pro confesso* was rendered against them. They assigned no errors in the Appellate Court. They have assigned no cross-errors here. It does not lie in the mouth of the appellee,

Brown, to object to the decree so far as it provides for the proceedings under the foreclosure hereafter to be had. The judgment already rendered in the condemnation suit is binding upon him. He was a party to that suit and introduced evidence upon the trial of it. He is estopped from denying that the sum of $17,500.00 is just compensation for the value and the damages. His assignments of error merely question the justice of the decree, in so far as it orders the money now in the county treasurer's hands to be paid to the mortgagees, and not to himself. As we hold that the money should be applied upon the mortgage debt which he owes, it is unnecessary to indulge in any further discussion as to those features of the decree which concern the mortgagees only.

It follows from the views here expressed that the judgment of the Appellate Court must be reversed and the decree of the Circuit Court affirmed. It is accordingly so ordered.

*Judgment reversed.*