Before discussing other issues, it should be determined whether this action against the defendant city by the plaintiff as mortgagee of property damaged by the city as the result of a grade-elimination project carried out by it, to require it to apply on the payment or reduction of such mortgage, such amount as has been agreed upon by the owner and the defendant as the amount of damage done to such property by reason of the prosecution of such project, not to exceed, however, the amount due on such mortgage, is a chancery action triable to the court; or, if not a chancery action, whether the trial court erred in directing a verdict for the plaintiff as mortgagee of such property for a sum equal to the impairment of its mortgage security, but not in excess of the amount agreed upon by the owner of the property and the defendant city as the damage done to such property by the grade-elimination project prosecuted by the city.
While this action in the first instance may have been one for damages for the impairment of plaintiff's mortgage security, it is important only to ascertain its present character as determined by the issues made under the amended pleadings upon which the rights of the parties were finally adjudicated at the time of trial. Taylor v. Brown, 92 Ohio St. 287,110 N.E. 739; Nordin v. Coulton, 142 Ohio St. 277, 51 N.E.2d 717.
Much, important to the rights of the parties, had transpired before the filing of plaintiff's supplemental and amended petition and before the time of trial. In 1928 the city of Youngstown had adopted legislation providing for the grade elimination on North Watt *Page 533 
street. In December of that year the glass company, as owner of the property in question, instituted its action for damages resulting to its property by reason of the grade-elimination project. The mortgage of the trust company, predecessor in interest to the plaintiff, was then a matter of record and was in default. The city of Youngstown alone was made party defendant. Neither the plaintiff glass company nor the city of Youngstown sought to have the trust company made party defendant. By agreement with the defendant, the city of Youngstown, judgment was entered in favor of the glass company in the sum of $47,000 representing the agreed damage to the property. The city of Youngstown held the money, a portion of which was contributed by the railroads, and upon payment of that judgment, it became invested with all easements and necessary rights in the property. Within 10 days after that suit was entered against it, and within one day after judgment was entered against it by its consent, the defendant paid the entire sum to the glass company. Later the property was sold under foreclosure, subject to the rights acquired by the city, and the proceeds of the sale were applied on the mortgage, leaving a definitely determined balance still due and unpaid thereon.
The validity of the proceedings taken by the city for the purpose of carrying out the grade-elimination project are not now questioned. The regularity and validity of the action of the glass company against the city for damages and the action of the trust company to foreclose its mortgage on the property, subject to the rights acquired by the city, do not present any issues for determination in this action because the judgments in those actions have long since become final.
Under the amended pleadings in this case and the facts developed under them as above recited, this action on its third trial is clearly one to subject the funds *Page 534 
in the hands of the city, representing the diminished value of the mortgaged property, to the satisfaction of the unpaid balance of the bank's claim so far as sufficient for that purpose, after crediting upon such mortgage the funds derived from the foreclosure sale of the remainder of the property. As in the case of taking property incumbered by liens under the power of eminent domain, the mortgage lien in this case, under the principle of equitable conversion, attached to the fund, and the city thus acquiring the property, became a resulting trustee responsible for the proper distribution of such funds.State Avenue Loan Building Co. v. Spiegel, 131 Ohio St. 488,3 N.E.2d 412.
The rights of the mortgagee under the circumstances of this case are stated in 18 American Jurisprudence, 868, Section 235, as follows:
"It is a general and well-established rule that, when mortgaged property is taken by eminent domain, or damaged to such an extent that the security of the mortgage is impaired, the mortgagee's rights against the land follow the award, and he may have the mortgage debt satisfied out of that fund in advance of other creditors of the mortgagor, if he takes the burden upon himself of enforcing his rights in that regard. * * * The view obtaining in a majority of jurisdictions is that, where mortgaged land is taken or damaged in eminent domain proceedings, the mortgagee is entitled either to the whole of the award made for the condemned land, or to a share thereof to the extent of his interest or damage. Thus, where the whole of the mortgaged land is taken in the proceedings, the mortgagee is entitled to the entire award or at least to so much of it as is necessary to satisfy the mortgage indebtedness. Where only a part of mortgaged property is taken, the mortgagee is entitled, generally speaking, to only so much of the award as is necessary to compensate him for his interest in the part taken. *Page 535 
On the ground that the lien of the mortgage is a property right, it has been held that, even when a mortgage is only a lien, the mortgagee may recover compensation directly from the condemning party, although the mortgagor has already been paid the full value of the land. * * * If the mortgagee seeks in equity to follow the damages awarded, he must show that the property was so damaged as to be worth less than the debt secured." Citing Fidelity-Philadelphia Trust Co. v. Kraus,325 Pa. 581, 190 A. 874, 110 A. L. R., 538. See Union Joint StockLand Bank of Detroit v. Hurford, 53 Ohio App. 116,4 N.E.2d 276; State Avenue Loan Building Co. v. Spiegel,supra.
The courts generally hold that where the mortgagee is not made a party in the appropriation proceeding, the lien follows the fund and the mortgagee may have it applied upon the mortgage debt. 2 Lewis on Eminent Domain (3 Ed.), 947, Section 523; State Avenue Loan Building Co. v. Spiegel, supra;Bellows v. B., C. M. Rd., 59 N.H. 491; Omaha Bridge Terminal Ry. Co. v. Reed, 69 Neb. 514, 96 N.W. 276; CalumetRiver Ry. Co. v. Brown, 136 Ill. 322, 26 N.E. 501, 12 L.R.A., 84.
In view of the foregoing discussion, this court is of opinion that where, as here, the damage to the property has been adjudicated and the damages reduced to a definite fund, the mortgagee may pursue his remedy in equity, and follow the fund, but only to the extent of the fund. Undoubtedly, he is not bound by the award or settlement to which he was not a party, and may sue in an action at law for damage to his security which in no event could exceed the value of the property taken. But he may also, as an alternative, accept the award and follow the fund in equity, in which event, he cannot recover more than the award.
Viewing this action as it was ultimately tried, it seems clear that it was a chancery action triable to the *Page 536 
court, and the plaintiff was therefore entitled to the judgment awarded it unless its right of recovery was barred or limited by one or more of the defenses set out in defendant's answer, or unless the decree was vitiated by errors occurring in the trial. Being a chancery action as to the main issue, the court was privileged to try and determine all other incidental issues.
Under the first defense the only possible claim that could be made relates to various credits which were made on plaintiff's claim, and an examination of the record fails to disclose any error made by the court in the determination and application of credits.
The second defense asserts that the money was paid to the glass company with the knowledge and consent of the trust company. However, the record shows that the trust company had no knowledge that an action had been brought by the city to fix the damages to the property and did not know that a judgment had been awarded to the glass company until after the judgment was paid. The only attempt to show knowledge or consent of the trust company to the payment by the city to the glass company was through an incidental conversation between the law director of the city and the president of the bank before the action for damages was brought, before the merger of the trust company and the bank, and before the bank was the owner of the claim. The essential part of the testimony of the law director representing the city, was as follows:
"Q. Now I wish Mr. Armstrong in your own words you would tell the court and jury what you said and what Mr. Rowland said, fixing the date as near as you can and the time of the conversation? A. Well the time of the conversation was during the pendency of the negotiations for settlement of the amount. * * *
"Q. All right now Mr. Armstrong will you proceed? A. I can't tell you the conversation, I don't remember, I can only give you the fact that Mr. Rowland *Page 537 
and I met in the lobby of the bank. He asked me some questionabout the progress of the negotiations. We talked for a minute or two and went on. That was all that happened. I don'tremember what he said nor what I said.
"Q. But you do have a definite recollection do you Mr. Armstrong that you did talk with Mr. Rowland about the negotiations between the city of Youngstown and the Standard Plate Glass Company relative to a settlement of the Standard Plate Glass Company's claim growing out of the Watt street widening project? A. That was the subject of our conversation.
"Q. And that took place before the money was paid by the city of Youngstown to the Standard Plate Glass Company by check dated December 28, 1928, and marked here as defendant's exhibit two? A. Yes, sir.
"Q. Mr. Armstrong was the amount of the settlement mentioned during the course of that conversation? A. No amount mentioned as I recall, there was anything mentioned except his inquiry as to the state of the progress of the negotiations and as I recall it I told him about what the situation was at that time. * * *
"Q. Was there anything said about any mortgage or anything ofthat kind? A. No." (Italics ours.)
This testimony fell far short of proving the allegations made by the defendant in its amended answer. Furthermore, in the absence of express authority by the board of directors of the bank, its president would have no authority to release the bank's claim or to consent that it be paid to another. No such authority was shown.
As to the third defense, the undisputed evidence is that two of the original makers of the note and mortgage had died without leaving any estate, and the other two had no property. Besides there was no obligation upon the bank to follow the makers on their personal liability, *Page 538 
to recoup its claim. City of Toledo v. Brown, 130 Ohio St. 513, 200 N.E. 750.
There was no evidence to support the defendant's fourth defense. The evidence is that the bank made efforts to sell the stock in question and could secure no buyers. The fifth so-called defense neither states facts sufficient to constitute a defense, nor was there substantial evidence adduced to support it. There is no evidence in the record to sustain the claim set out in the sixth defense. The claim made in the seventh defense has been reviewed and disposed of under the claim made under the second defense. The so-called eighth defense is not only demurrable, but there was no evidence to support it. The same is true as to the ninth defense.
The tenth and last defense pleads the four-year statute of limitation. Even if the date of filing of the glass company's action against the city on December 21, 1928, wherein the damage to the property was determined through a consent decree, be taken as fixing the time when plaintiff's cause of action arose, this action was within the four-year limitation, having been instituted on July 26, 1932.
Besides, it is questionable whether plaintiff's cause of action arose until after the suit in foreclosure had been terminated. If upon the sale of the remainder of the mortgaged property there had been proceeds sufficient to satisfy plaintiff's claim, it would have no right of action. This action may have been prematurely brought, and as a result it was halted until the foreclosure action was completed and the credit of the proceeds of the sale applied to plaintiff's claim. Then, for the first time, the extent of the liability of the defendant was fixed. There is no merit in this defense.
The defendant makes complaint that the trial court erred in directing a verdict for the plaintiff. The court may direct such a verdict provided it assumes that all *Page 539 
the facts claimed by way of defense and supported by evidence are true, but finds, nevertheless, that there are no facts proven which constitute a defense to a cause of action in which the right of the plaintiff to the amount claimed had been established. Satterthwaite v. Morgan, Jr., 141 Ohio St. 447,48 N.E.2d 653. The evidence failed to support the claimed defenses of the defendant, and the court did not err in directing a verdict for the plaintiff. If the question as to the amount of damage done to the property had been an open one, the trial court could not properly have directed a verdict in favor of the plaintiff. But since the amount of damage done had been determined by the owner of the property and the defendant, and for the purpose of its claim accepted as correct by the plaintiff, the court was justified in directing a verdict for the amount of damage not to exceed the amount of the agreed settlement or award. The defendant cannot complain as to the amount of the verdict since there was no substantial dispute as to the amount of plaintiff's claim, and since the amount of the verdict was within the amount of the award to which it had agreed.
The defendant complains of the measure of damages adopted by the court. If this had been an action at law for damages for the impairment of security the measure would naturally be the difference in the value of the property before and after the improvement, but not to exceed the amount of the mortgage. But since the defendant agreed with the glass company that the damage to the property was $47,000, it is not in a position to contend that the impairment of plaintiff's security was less than that amount when the mortgage claim was in a greater amount. On the other hand, the plaintiff may waive any greater claim of damage and accept the amount fixed by the defendant and the owner of the property. It then becomes a matter of accounting and other evidence was not necessary. *Page 540 
The defendant claims that the trial court erred in refusing to make in this case a finding of facts separately from conclusions of law. While this was an equitable action for accounting, procedurally it was tried to a jury as an action at law. The defendant, at the close of the testimony, moved for a directed verdict. The plaintiff made a similar motion for a directed verdict in its favor. By this procedure the court was called upon to decide the case on questions of fact, in which event, the defendant was entitled to have the court make a finding of facts separately from conclusions of law.Levick v. Bonnell, 137 Ohio St. 453, 30 N.E.2d 808.
But when the plaintiff moved for a directed verdict, the defendant immediately withdrew its motion to direct a verdict and requested that the case go to the jury. The court then directed a verdict for the plaintiff and in so doing it did not decide questions of fact but determined, as a matter of law, that defendant's uncontradicted evidence did not entitle it to a judgment. Bauer v. Cleveland Ry. Co., 141 Ohio St. 197,47 N.E.2d 225. After motions for a new trial were overruled, judgment was entered on the verdict as in an action at law. Under such circumstances, the defendant could not require the court to make a finding under Section 11421-2, General Code, as requested. Bauer v. Cleveland Ry. Co., supra. The defendant has not been deprived of a full review of the record in this case, and in view of the fact that the matters under consideration have been in controversy for more than 15 years, the case should not now, in the absence of prejudicial error, be remanded for the purpose of having the court make a finding of fact and separate conclusions of law.
This court finds no prejudicial error and the judgment of the Court of Appeals is affirmed.
Judgment affirmed. *Page 541 
WEYGANDT, C.J., MATTHIAS and BELL, JJ., concur.
WILLIAMS, J., concurs in paragraphs one, five and six of the syllabus and in the judgment.
ZIMMERMAN and TURNER, JJ., dissent.